## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**AUBREY C. MOORE**                                                    **PLAINTIFF**

**v.**                                   **Case No.: 4:20-cv-00257-LPR**

**FORREST CITY SCHOOL DISTRICT**
**and TIFFANY HARDRICK, Superintendent**                    **DEFENDANTS**

### ORDER

This case involves the firing of Plaintiff Aubrey C. Moore from his job teaching science at

a middle school in the Forrest City School District ("District").  Mr. Moore alleges that the District

and Superintendent Tiffany Hardrick unlawfully discriminated against him.  First, Mr. Moore

brings race discrimination claims under Title VII of the Civil Rights Act of 1964,[1] 42 U.S.C. §

1981, and the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.[2]  Second, Mr. Moore brings

age discrimination claims under the Age Discrimination in Employment Act of 1967 ("ADEA")

and the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.[3]  Third, Mr. Moore brings a

retaliation claim under Title VII.[4]  Fourth, Mr. Moore brings a state law claim for breach of

---

[1] 42 U.S.C. §§ 2000e *et seq.*

[2] Am. Compl. (Doc. 20) at 1.  Mr. Moore also alleged in his complaint that he was discriminated against based on his sex; however, Mr. Moore's counsel conceded at the motion for summary judgment hearing that this claim was meritless.  Oct. 4, 2021 Hr'g Tr. at 2–3.

[3] 29 U.S.C. § 621 *et seq.*  At the summary judgment hearing, Mr. Moore's counsel stated that Mr. Moore's age discrimination claim falls under Title VII, but Title VII does not cover age discrimination.  Oct. 4, 2021 H'rg Tr. at 3; 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . .").  If the Court were to hold Mr. Moore to his counsel's insistence that Mr. Moore's claim be considered under Title VII, the claim would fail at the outset.  The Court believes the fairest way to proceed is to construe Mr. Moore's discrimination claim as being brought under the ADEA.  Practically speaking, this makes little difference because the same analytical framework applies under both Title VII and the ADEA.

[4] There's some confusion about the nature of Mr. Moore's retaliation claim.  *Compare* Oct. 4, 2021 Hr'g Tr. at 5 (Mr. Moore's counsel stating the retaliation claim is under the First Amendment and Title VII), *with id.* at 44 (Mr. Moore's counsel stating the retaliation claim is under Title VII).  Mr. Moore does not mention a First Amendment claim in his complaint or in his summary judgment briefing.  The Court concludes that there is no First Amendment claim brought in this case.

contract, alleging the District failed to compensate him for his unused sick leave.[5]  Pending before

the Court is a Motion for Summary Judgment by Defendants.[6]  For the reasons discussed below,

the Court GRANTS in part the Summary Judgment Motion.

## LEGAL STANDARD

Summary judgment is proper if the moving party shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law.[7]  If the moving party

makes such a showing, the non-moving party must then present "specific facts, by affidavit,

deposition, or otherwise, showing the existence of a genuine issue for trial" to avoid summary

judgment.[8]

Importantly, "[t]he mere existence of a factual dispute is insufficient alone to bar summary

judgment."[9]  The dispute of fact must instead be both genuine and material to prevent summary

judgment.[10]  Whether there is a material dispute of fact "rests on the substantive law," because "it

is the substantive law's identification of which facts are critical and which facts are irrelevant that

governs."[11]  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."[12]

---

[5] Am. Compl. (Doc. 20) at 1.  Defendants did not move for summary judgment on Plaintiff's breach of contract claim because they say that they were not on notice that Plaintiff pleaded this claim.  Oct. 4, 2011 Hr'g Tr. at 8–9.  Based on paragraphs 1 and 14 of the Amended Complaint, the Court finds that Plaintiff sufficiently pleaded the contract claim.

[6] Defs.' Mot. for Summ. J. (Doc. 23).

[7] *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(2)).

[8] *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034 (8th Cir. 2005).

[9] *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

[10] *Torgerson*, 643 F.3d at 1042.

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[12] *Id.*

The Court must view the genuinely disputed material facts in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences. As to the undisputed facts, the Court can of course rely on those for summary judgment. Accordingly, the most pro-plaintiff version of the record that a rational juror could find to have occurred will be considered here.[13]

## BACKGROUND

Mr. Moore, an African-American man, began working for the District in 2008 teaching science.[14] In 2016, Mr. Moore received a notice that the District did not intend to renew his contract because he failed to submit timely lesson plans.[15] That notice was rescinded after Mr. Moore reassured the District that his untimely submission of lesson plans would not happen again.[16] Aside from that one incident in 2016, the record is devoid of any discussion of the quality of Mr. Moore's work from 2008 until near the end of 2018. That is where the story of this case picks up in earnest. Coincidentally (or not), it also happens to be right around the time of a change in school administration.[17]

### I.  The lead up to Mr. Moore's termination

In the beginning of the 2018-19 school year, the District hired a man named Casey Graml as a science coach.[18] In November of 2018, Mr. Graml was promoted to Assistant Principal.[19] Between December 2018 and March 2019, Mr. Graml sent several letters to Mr. Moore

---

[13] *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).

[14] Am. Compl. (Doc 20) ¶ 3; Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 4.

[15] Ex. 2 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-2) at 5; Ex. 1 to Defs.' Mot. for Summ. J. (Doc. 23-1) at 3.

[16] Ex. 1 to Defs.' Mot. for Summ. J. (Doc. 23-1) at 3.

[17] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 23.

[18] *Id.* at 23–24.

[19] *Id.* at 23; Pl.'s Opp'n to Defs.' Mot. for Summ. J. (Doc. 29) at 3.

reprimanding him for poor performance.[20]   These letters summarized numerous informal and formal observations recorded by the District over this period of time.[21]   Because the Court considers these letters and observations central to its consideration of Mr. Moore's claims, it restates the letters in full below in chronological order.

On December 12, 2018, Mr. Graml sent the following letter to Mr. Moore:

Aubrey Moore,

You are hereby being notified that I am reprimanding you and this reprimand shall be placed in your personnel file.  The basis of this reprimand may also result in a recommendation of additional discipline or termination if there are further findings or repeat behavior.  The reasons for the reprimand are set forth below:

1.  I have not received any lesson plans for your 8th grade science class since the change in administration on November 26, 2018.

2.  On Monday, December 3rd, 2018[,] I emailed you and asked that you send me your lesson plans for the week.  I reminded you that the lesson plans were due at the end of the day the previous Thursday.  I never received those lesson plans.

3.  On Tuesday, December 4th, 2018, I sent you an email which, among other announcements, stated that "Lesson plans should be emailed to me by the end of the day on Wednesday of each week."

4.  You did not send me your lesson plans on Wednesday, December 5, 2018[,] or any time thereafter.  As of Wednesday, December 12th, 2018, I still have not received your lesson plans for the week of December 10th, 2018.

5.  On Friday, December 7, 2018[,] I observed your class and found that your lesson was not aligned to the standards.  Students were on a website called Learning Blade, learning about coding, even though the objective you had posted stated that students would be converting measurements.  This was the same objective that was posted in the first week of school.

Mr. Moore, I found your behavior to be very unprofessional and failing to meet the proficient language according to the TESS evaluation system in the following domain[s] and function[s]:

-Domain 1: Planning & Preparation / Function: Setting Instructional Outcomes

---

[20] Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶¶ 7–13.

[21] Ex. 6 to Defs.' Mot. for Summ. J. (Doc. 23-6).

-Domain 1: Planning & Preparation / Function: Designing Coherent Instruction

In the event that you should engage in any future actions of this or a similar nature or otherwise fail to abide by District policies and procedures, it may result in additional discipline including possible suspension and/or termination.

Sincerely,

Casey Graml
8th Grade Vice Principal[22]

The letter shows Mr. Moore's signature below the following disclaimer: "I understand that by signing and acknowledging receipt, I am not necessarily agreeing with any allegation set forth in the above letter.  I am merely acknowledging receipt of the letter."[23]  Nothing in the record indicates that Mr. Moore communicated with Mr. Graml about this letter at any point after Mr. Moore received it.

On December 18, 2018, Mr. Graml sent the following letter to Mr. Moore:

Aubrey Moore,

You are hereby being notified that I am reprimanding you and this reprimand shall be placed in your personnel file.  The basis of this reprimand may also result in a recommendation of additional discipline or termination if there are further findings or repeat behavior.  The reasons for the reprimand are set forth below:

1.  I have not received any lesson plans for your 8th grade science class since the change in administration on November 26, 2018.  As of Monday, December 17, 2018, your lesson plans still have not been turned in.  They were due on Wednesday, December 12, 2018.  This is a violation of policy 3.83.

2.  On Friday, December 14, 2018, your objective on the white board stated that students would be comparing electromagnetic waves and learning about the waves of the electromagnetic spectrum, but your lesson was about electric currents.

3.  You were late for work on at least three occasions during the week of December 10, 2018.  On Tuesday, December 11, 2018[,] I emailed you and informed you

---

[22] Ex. 5 to Defs.' Mot. for Summ. J. (Doc. 23-5) at 1.

[23] *Id.*

that your tardiness had caused delays for dismissal from breakfast for the entire school and reminded you to pick up your class from the cafeteria every day at 7:45 am.

4. On Friday, December 14, 2018, you were late for work and did not even call in to let anybody know.  You did not walk through the door until 7:57 am.  Your class was in the hallway waiting for you, just as it had been the previous day.  I had to find another teacher to supervise your students until you got there.  This is a violation of policy 3.27.

5. You were late again on Monday, December 17, 2018.  You did not arrive until after 7:45 am[,] and your students had to wait in the cafeteria for you to get there to take them to first period.  Once again, this is a violation of policy 3.27.

Mr. Moore, I found your behavior to be very unprofessional and failing to meet the proficient language according to the TESS evaluation system in the following domain[s] and function[s]:

-Domain 1: Planning & Preparation / Function: Setting Instructional Outcomes

-Domain 1: Planning & Preparation / Function: Designing Coherent Instruction

-Domain 4: Professional Responsibilities / Function: Showing Professionalism

In the event that you should engage in any future actions of this or a similar nature or otherwise fail to abide by District policies and procedures, it may result in additional discipline including possible suspension and/or termination.

Sincerely,

Casey Graml
8th Grade School Leader[24]

The letter shows Mr. Moore's signature below the following disclaimer: "I understand that by signing and acknowledging receipt, I am not necessarily agreeing with any allegation set forth in the above letter.  I am merely acknowledging receipt of the letter."[25]  Nothing in the record indicates that Mr. Moore communicated with Mr. Graml about this letter at any point after Mr. Moore received it.

---

[24] *Id.* at 2–3.

[25] *Id.* at 3.

6

On January 24, 2019, Mr. Graml sent Mr. Moore a letter notifying him that he was being placed on an Intensive Growth Plan ("IGP").[26]  The letter stated the following:

HAND DELIVERED

Dear Aubrey Moore,

You are hereby notified that I am placing you on an intensive growth plan for the remaining semester of the 2018-19 school year.  This will mark as the beginning of your intensive support.  The reasons for the continued intensive support are set forth below:

1.  Your Arkansas Teacher Excellence Support System (TESS) evaluations during the 2018-2019 school year continue to show a majority of ineffective ratings. You will be placed on Intensive Support Status.  Multiple informal observations with follow up suggestions were conducted throughout the year to provide you with guidance[,] without significant improvement, which reflects insufficient growth and ineffective teaching[,] which do not meet the expectations required by the District.  Students assigned to your classes are being adversely affected by the ineffective teaching methods and classroom management.

2.  The continued and deteriorating inability to manage the classroom and adequately plan & execute lessons has led to an intolerable situation.  You have failed to improve and meet the level of instruction and supervision required for adequate education of those students assigned to you.

Due to your status of Intensive Support, we will revisit and revise your PGP for the remainder of the 2018-2019 school year.

Sincerely,

Casey Graml, School Leader[27]

The letter shows Mr. Moore's signature and a witness's signature below the following disclaimer: "My signature does not imply that I agree with the contents of the letter.  My signature indicates that I have receive[d] the correspondence."[28]

---

[26] Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 6; Ex. 7 to Defs.' Mot. for Summ. J. (Doc. 23-7) at 1.

[27] Ex. 7 to Defs.' Mot. for Summ. J. (Doc. 23-7) at 1.

[28] *Id.*

7

On January 28, 2019, Mr. Graml sent the following letter to Mr. Moore:

Aubrey Moore,

You are hereby being notified that I am reprimanding you and this reprimand shall be placed in your personnel file. The basis of this reprimand may also result in a recommendation of additional discipline or termination if there are further findings or repeat behavior. The reasons for the reprimand are set forth below:

1. I have not received any lesson plans for your 8th grade science class for the week of 1/28, which were due on 1/23/19. Last week you did not turn in your lesson plans until Tuesday 1/22/19 even though they were due the previous week on Wednesday. Further, the plans you had turned in for last week were the same as the week prior. These are violations of policy 3.83.

2. On Wednesday, 1/23/19, you directed one of your classes to line up and walk around the hallway during instructional time. You stood at the end of the hallway and did not even accompany those students as they walked up and down the 7th grade hall disrupting those classes. This was a violation of policy 3.27.

3. You were late for work on Tuesday 1/22/19, through Thursday 1/24/19, and again on 1/28/19[,] when you did not arrive at your classroom until 7:55 am. You must arrive at the cafeteria promptly at 7:45 am each morning to pick up your first period students. I have had to find another teacher to supervise your students until you get to class each morning. This is a violation of 3.27.

Mr. Moore, I found your behavior to be very unprofessional and failing to meet the proficient language according to the TESS evaluation system in the following domains and functions:

-Domain 1: Planning & Preparation / Function: Setting Instructional Outcomes

-Domain 1: Planning & Preparation / Function: Designing Coherent Instruction

-Domain 4: Professional Responsibilities / Function: Showing Professionalism

In the event that you should engage in any future actions of this or a similar nature or otherwise fail to abide by District policies and procedures, it may result in additional discipline including possible suspension and/or termination.

Sincerely,

Casey Graml

8th Grade School Leader[29]

The letter shows Mr. Moore's signature below the following disclaimer: "I understand that by signing and acknowledging receipt, I am not necessarily agreeing with any allegation set forth in the above letter.  I am merely acknowledging receipt of the letter."[30]  Nothing in the record indicates that Mr. Moore communicated with Mr. Graml about this letter at any point after Mr. Moore received it.

On February 15, 2019, Mr. Graml sent the following letter to Mr. Moore:

Aubrey Moore,

You are hereby being notified that I am reprimanding you and this reprimand shall be placed in your personnel file.  The basis of this reprimand may also result in a recommendation of additional discipline or termination if there are further findings or repeat behavior.  The reasons for the reprimand are set forth below:

1. On Tuesday 2/12/19 during 3rd period, you put two students out of the room without any write up and without informing anyone.  I walked them back to class to see why they were put out and to get some work for them, then took them back to the hallway for the rest of the period.  When I left your room, you told your students "You can't get nothing done.  You break a rule you go out there and talk to him then he brings you right back in to do the same crap again.  How can yall ever start learning when you have someone enabling you?  They're not caring.  He wants you to act a fool."  This was extremely unprofessional and was a purposeful attempt to undermine the administration and to negatively influence the culture of the school.

2. As of 2/15/19[,] you have not turned in your lesson plans that were due on 2/13/19.

3. You were late for work on 2/13/19, you did not arrive until 7:55 am.  You were also late for work on 2/14/19[,] and did not arrive until 7:50 [am].  You are required to arrive at the cafeteria at 7:45 am.

Mr. Moore, I found your behavior to be very unprofessional and failing to meet the proficient language according to the TESS evaluation system in the following domain[s] and function[s]:

---

[29] Ex. 5 to Defs.' Mot. for Summ. J. (Doc. 23-5) at 4.

[30] *Id.* at 5.

-Domain 1: Planning & Preparation / Function: Setting Instructional Outcomes

-Domain 1: Planning & Preparation / Function: Designing Coherent Instruction

-Domain 4: Professional Responsibilities / Function: Showing Professionalism

In the event that you should engage in any future actions of this or a similar nature or otherwise fail to abide by District policies and procedures, it may result in additional discipline including possible suspension and/or termination.

Sincerely,

Casey Graml
8th Grade School Leader[31]

The letter shows Mr. Moore's signature below the following disclaimer: "I understand that by signing and acknowledging receipt, I am not necessarily agreeing with any allegation set forth in the above letter.  I am merely acknowledging receipt of the letter."[32]  Next to his signature, Mr. Moore wrote "Do Not Agree."[33]  Nothing in the record indicates that Mr. Moore communicated with Mr. Graml about this letter at any point after Mr. Moore received it.

On March 26, 2019, Mr. Moore received his "Final Review" for his IGP, which stated that "Mr. Moore did not show adequate growth according to his IGP."[34]  Dr. Tiffany Hardrick (the Superintendent) subsequently recommended to the District School Board that Mr. Moore's contract not be renewed for the 2019-2020 school year because he repeatedly violated school policies.[35]  Mr. Moore was notified by letter of Dr. Hardrick's recommendation on April 22,

---

[31] *Id.* at 6.

[32] *Id.*

[33] *Id.*

[34] Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 13; Defs.' Statement of Undisputed Material Facts (Doc. 25) ¶ 13.

[35] Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 2; Defs.' Statement of Undisputed Material Facts (Doc. 25) ¶ 2.

2019.[36]  This letter stated the following:

Via Hand Delivery

Mr. Aubrey Moore
P.O. Box 129
Forrest City, AR 72335

Re: Recommended Nonrenewal of Employment Contract

Dear Mr. Moore:

Pursuant to the Arkansas Teacher Fair Dismissal Act, Ark. Code Ann. § 6-17-1501, *et seq.*, I am recommending that your employment contract as Teacher with the Forrest City School District ("District") be non-renewed for the 2019-2020 school year.  The reasons for this recommendation are failure to comply with policies, procedures, and directives, inefficiency and incompetence and repeated or material neglect of duty[,] all conduct which materially interferes with the continued performance of your duties, and other just and reasonable cause, as more particularly set forth as follows:

1.  You have consistently failed to submit lesson plans for the 2018-2019 school year, which is a violation of policy 3.83.

- Lesson plans are due by EOD each Wednesday for the following week, with a grace period if submitted by Thursday morning prior to the beginning of the school day[,] and your plans were not submitted on time or at all for at least the following weeks:
- 11/26-11/29 (no LP)
- 12/3-12/7 (no LP)
- 12/10-12/14 (no LP)
- 12/17-12/21 (no LP)
- 1/7-1/11 (no LP)
- 1/14-1/18 (sent on Thursday, 1/10, 1 day late)
- 1/21-1/25 (sent on Tuesday 1/22 however, you submitted the exact same document as the previous week.  You did not submit an actual plan for that week until the week was over on Friday 1/25).
- 1/28-2/1 (sent on Friday 1/25, 2 days late)
- 2/4-2/8 (no LP)
- 2/11-2/15 (sent on Thursday 2/7, 1 day late)
- 2/18-2/22 (sent on Tuesday 2/19, 6 days late)
- 2/25-3/1 (sent on Friday 2/22, 2 days late)
- 3/4-3/8 (sent on Friday 3/1, 2 days late)

---

[36] Ex. 1 to Defs.' Mot. for Summ. J. (Doc. 23-1); Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 14; Defs.' Statement of Undisputed Material Facts (Doc. 25) ¶ 14.

- 3/11-3/15 (sen[t] on Friday 3/8, 2 days late)
- 3/25-3/29 (sent on Tuesday 3/26, 6 days late)
- 4/1-4/5 (no LP)
- 4/8-4/12 (no LP)
- 4/15-4/19 (no LP)
- 4/22-4/26 (sent on Wednesday 4/24, 7 days late)

2. In addition, you have missed a total of 18.5 days as of 4/26/2019. You are in violation of policy 3.8 definition of excessive sick leave. You have exceeded the allowed sick and personal leave days for the 2018-2019 school year[,] giving the most liberal application. You have also been tardy, without notice[,] on multiple occasions. You have failed to follow procedure for absences and/or tardiness, as you failed to give notice of your absence or tardiness on those occasions.

3. Your teaching methods, classroom management and preparation have been poor and below the standards expected by the District. You have failed to adequately improve over the school year.

4. You have been provided with reprimands and warning that the above actions as described in items 1 through 3 above could result in additional disciplinary action up to and including termination of your contract on the following dates: December 12, 2018, December 18, 2018, January 28, 2019, February 19, 2019. You were placed on an Intensive Growth Plan under TESS on January 24, 2018 for reasons as set forth on that plan including those as set forth in items 1 through 3 above, giving you notice of the immediate need for improvement and that failure to [do] so would lead to non-renewal. You had reviews on multiple occasions under the plan showing no improvement. You were offered assistance including, but not limited to[,] Professional Learning Community to assist you with these issues and failed to attend on March 6, 2019, March 13, 2019, and April 2, 2019. In April of 2016 you were given notice of non-renewal of your contract for essentially the same reasons. Based on assurances from you and your AEA representative that failure to properly prepare and timely submit lesson plans would not occur again, the letter of recommendation of non-renewal was rescinded. However, you have again in the 2018-2019 [school year] failed to do so, as set forth in sections one and three above, despite being clearly aware of the consequences.

You have a right to request a hearing on this recommendation pursuant to the Arkansas Teacher Fair Dismissal Act. If you wish to request such a hearing, you must make a request for the hearing, in writing by certified or registered mail, or delivered in person, to the president, vice president or secretary of the District's board of directors, with a copy to the Superintendent, within thirty (30) calendar days from the date you receive this letter.

If you request a hearing, it will take place at an agreed upon time, or, if no agreement can be reached, no sooner than five (5) and no more than twenty (20) days from the receipt of your hearing request.  The hearing may be public or private at your request, and, if you so request in writing, a record of the hearing will be made and a transcript provided to you at no cost.  You may be represented by an attorney or other person(s) of your choosing, and the Board may also be represented.

Sincerely,

Dr. Tiffany Hardrick
Superintendent

cc: Personnel File[37]

The letter shows Mr. Moore's signature above the following disclaimer: "Your signature does not indicate your agreement with the contents of this notice, but signifies that the notice has been personally delivered to you."[38]   Below his signature, Mr. Moore wrote "Do Not Agree."[39] Following a hearing held under the Arkansas Teacher Fair Dismissal Act, the District School Board accepted Dr. Hardrick's recommendation and voted to not renew Mr. Moore's contract on June 20, 2019.[40]

Mr. Moore filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on December 5, 2019.[41]   After receiving his right-to-sue letter, Mr. Moore filed this lawsuit on March 10, 2020, and he filed an amended complaint on December 21, 2020.[42] Mr. Moore sued the District and Dr. Hardrick in her official and individual capacities.[43]   Mr. Moore

---

[37] Ex. 1 to Defs.' Mot. for Summ. J. (Doc. 23-1) at 1–4.

[38] *Id.* at 4.

[39] *Id.*

[40] Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 4; Defs.' Statement of Undisputed Material Facts (Doc. 25) ¶ 4.

[41] Pl.'s Opp'n to Defs.' Mot. for Summ. J. (Doc. 29) at 2.

[42] *Id.*; Compl. (Doc. 1); Am. Compl. (Doc. 20).

[43] Am. Compl. (Doc. 20) ¶ 5.

brings several federal claims and a state law claim.[44]  No written discovery or depositions, other

than Defendants' deposition of Mr. Moore, were conducted in this case.[45]  Defendants argue that

they're entitled to summary judgment.

## II.   Mr. Moore challenges the District's reasoning for terminating him

Mr. Moore contends that Mr. Graml's reprimands of Mr. Moore were neither in good faith

nor justified.[46]  The Court will walk through Mr. Moore's contentions and the purported factual

bases for such contentions.

### A.  Lesson plans

Mr. Moore disputes that he violated policy 3.83 (the policy that covers lesson plan

requirements).[47]  He states that he submitted the lesson plans via the District's new digital

submission process.[48]  At his deposition, Mr. Moore conceded that he failed to email his lesson

plans by the end of each Wednesday as Mr. Graml requested.[49]  But Mr. Moore maintains that Mr.

Graml could access his plans via the District's digital system.[50]  In response to the question of why

he didn't email Mr. Graml the lesson plans as requested, Mr. Moore stated: "All I can say is, they

---

[44] The basis for his state law breach of contract claim relates to unused sick leave that Mr. Moore had accumulated at the time he was terminated.  Am. Compl. (Doc. 20) ¶ 14.  Upon his departure from the District, Mr. Moore says he had 74 sick days, which he claims he was entitled to be compensated for.  *Id.*  The District has not compensated Mr. Moore for these days.  *Id.*

[45] Oct. 4, 2021 Hr'g Tr. at 8, 37.

[46] Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 11.

[47] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 27.

[48] Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶¶ 7–8.

[49] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 19 ("Q: And so, are you telling me that since [Mr. Graml] had that access, you just didn't e-mail them? A: Yes. Q: Okay. So, as we sit here today, do you recognize that Mr. Graml had asked for the lesson plans via e-mail? A: I see that listed, yes. Q: Okay. And your testimony is, you did not e-mail those? A: I made them accessible to him.  I made them available to him.  They may not have been the exact way he is stating there, emailed."); Ex. 4 to Defs.' Mot. for Summ. J. (Doc. 23-4) at 5.

[50] Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 16; Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 13 (Mr. Moore testified that "[t]he principal had a master code where he had access to our lesson plans, our grades, and all that, because it was all within the system . . . ."); Defs.' Statement of Undisputed Material Facts (Doc. 25) ¶ 16; Ex. 4 to Defs.' Mot. for Summ. J. (Doc. 23-4) at 4.

were done digitally and they were digitally delivered.  Maybe not via e-mail directly, but within the digital system itself."[51]  It appears that Mr. Moore's contention is that the creation of the lesson plan itself satisfied the requirement to submit lesson plans because the digital environment in which the lesson plan was created provided the administration with the ability to see the lesson plan as soon as it was created.

At a couple of points in the record, Mr. Moore says that technology problems prevented him from submitting lesson plans.[52]  Mr. Moore explains that the District purchased a new textbook to which teachers had digital access.[53]  Teachers had an initial training on how to access the book from the vendor, and Mr. Moore claims that he received two additional trainings as well.[54]  After receiving the letters of reprimand for failing to submit lesson plans, Mr. Moore says he asked for but did not receive additional support to show him how to use the digital book.[55]  Mr. Moore does not say who he asked or precisely when he asked.

Lack of computer access was another purported problem that Mr. Moore testifies about. The District provided Mr. Moore with two computers—one in his classroom that he refers to as "the tower" and a portable computer that he could take home and use outside the classroom.[56]  He claims that both computers didn't function properly at times.[57]  At his deposition, Mr. Moore confirmed that the tower had access to email and that he created his lesson plans on the tower.[58]

---

[51] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 18–19.

[52] *Id.* at 20–21; Ex. 4 to Defs.' Mot. for Summ. J. (Doc. 23-4) at 2, 4.

[53] Ex. 8 to Defs.' Mot. for Summ. J. (Doc. 23-8) at 2.

[54] *Id.*

[55] *Id.*

[56] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 20.

[57] *Id.* at 16, 20.

[58] Ex. 2 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 20–21.

He stated that he used the tower to generate lesson plans on a weekly basis.[59]  When confronted about his conflicting testimony—that the tower didn't work but he used the tower to create lesson plans on a weekly basis—Mr. Moore said, "I was able to do them from the tower.  But I don't live in that classroom."[60]

### B.  Classroom management and teaching

Mr. Moore maintains that Mr. Graml failed to support Mr. Moore's efforts to discipline his students.[61]  For example, Mr. Moore argues that Mr. Graml caused Mr. Moore's students to not respect him by engaging in horseplay with them and by not enforcing Mr. Moore's disciplinary decisions.[62]  In Mr. Moore's words, Mr. Graml "came into my classroom and said he wasn't going to do anything to help me with the kids as far as . . . discipline-wise."[63]  Mr. Moore identified seven teachers who had similar experiences with Mr. Graml failing to support their efforts to discipline students.[64]  Based on what Mr. Moore has heard from his former colleagues and students still at the school, this problem with Mr. Graml persists today.[65]

When confronted in this litigation about Mr. Graml's observation that the objective on Mr. Moore's white board did not match what he was actually teaching, Mr. Moore said Mr. Graml was "nitpicking."[66]  For example, the objective on Mr. Moore's board said "comparing electromagnetic

---

[59] Ex. 4 to Defs.' Mot. for Summ. J. (Doc. 23-4) at 6.

[60] *Id.*

[61] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 30; Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 10.

[62] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 30; Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 12.

[63] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 30.

[64] *Id.* at 32–33, 35.

[65] *Id.* at 32.  Mr. Moore also argues that his classes were overpopulated—he taught six classes with 30 students in each class.  Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 16.

[66] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 29.

waves" and he was teaching about "electric currents."[67]  Because he contends that these two are related, Mr. Moore says flagging this as a problem shows that Mr. Graml is a "nitpicker."[68]

### C.  Tardiness and absences

Mr. Moore concedes that he was late to the cafeteria on the days identified by Mr. Graml.[69] However, Mr. Moore contends that he was typically only a few minutes late and other job duties caused his tardiness.[70]  When he was going to be more than a few minutes late, Mr. Moore says he would call and let the school know, but he admits that he failed to call on one occasion when he was late.[71]  Mr. Moore says he had "morning duty," which required him to watch students walk through the gym into school.[72]  Such supervision was necessary because sometimes students would walk past the school to the grocery store and skip school.[73]  On days that he had morning duty, Mr. Moore expected (but never sought any confirmation) that Mr. Graml would understand why he was late and excuse his tardiness.[74]

Mr. Moore disputes that he violated policy 3.8 (the policy that defines excessive sick leave).[75]  At the school board hearing held to consider the renewal of Mr. Moore's contract, Mr.

---

[67] *Id.*

[68] *Id.*

[69] *Id.* at 39.

[70] *Id.*; Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 9.

[71] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 40; Ex. 8 to Defs.' Mot. for Summ. J. (Doc. 23-8) at 2.

[72] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 40.

[73] *Id.*

[74] *Id.*

[75] Per policy 3.8, "'Excessive Sick Leave'" is absence from work, whether paid or unpaid, that exceeds twelve (12) days in a contract year for an employee and that is not excused pursuant to: District policy; the Family Medical Leave Act; a reasonable accommodation of disability under the [Americans with Disabilities Act]; or due to a compensable Workers' Compensation claim."  Ex. 3 to Defs.' Mot. for Summ. J. (Doc. 23-3) at 1.

Moore testified that he was not out sick for 18 days.[76]  He said that he was out sick for 12 days, and the remaining days, he was out to attend workshops and pre-AP certification courses.[77]

### D.  Mr. Moore's complaints about Mr. Graml and a newly hired teacher

Sometime in the spring of 2019, while Mr. Moore was still employed as a teacher, the District hired a white male as a "roundabout" to teach math and science.[78]  Mr. Moore says that the new hire was a friend of Mr. Graml's.[79]  Mr. Moore estimates that this young man was in his mid-20s.[80]  Mr. Moore himself is fifty years old.[81]  The new hire told Mr. Moore that he was employed to teach science and that he would be teaching science the following fall.[82]  The record does not reveal specifically when this conversation took place.  Mr. Moore infers from this conversation that Mr. Graml was trying to push Mr. Moore out to make space for his friend.  Both Mr. Moore and a fellow science teacher, Coach Hodges, were no longer employed by the District after the 2019 spring semester.[83]  Mr. Moore does not know whether the new hire filled his spot, Mr. Hodges's position, or some other position following Mr. Moore's departure.[84]

Mr. Moore's other complaints about Mr. Graml include, that on some occasions, Mr. Graml would stand over Mr. Moore's desk in an intimidating manner while Mr. Moore ate lunch.[85]  Mr. Moore complains that he was given no time to review Mr. Graml's letters of reprimand before he

---

[76] Ex. 8 to Defs.' Mot. for Summ. J. (Doc. 23-8) at 1.

[77] *Id.*

[78] Ex. 2 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-2) at 12–13.

[79] *Id.* at 12.

[80] *Id.* at 15.

[81] *Id.*

[82] *Id.* at 13.

[83] *Id.* at 14.

[84] Ex. 2 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-2) at 14.

[85] Am. Compl. (Doc. 20) ¶ 11; Pl.'s Opp'n to Defs.' Mot. for Summ. J. (Doc. 29) at 7.

was asked to sign them.[86]  Mr. Graml would come to Mr. Moore's classroom while he was teaching and ask that Mr. Moore sign the letters on the spot.[87]  Mr. Moore contends that he did not receive copies of the letters.[88]  And Mr. Moore maintains that his placement on the IGP was unjustified.[89] Mr. Moore claims that Mr. Graml placed Mr. Moore on the IGP to create a paper trail that would support Dr. Hardrick's recommendation that Mr. Moore be terminated.[90]

### E.  Mr. Moore's complaints about Dr. Hardrick's retaliatory attitude

According to Mr. Moore, Dr. Hardrick had a retaliatory attitude towards him for several reasons.  First, Dr. Hardrick asked Mr. Moore to change her daughter's grade from a B to an A, but Mr. Moore refused to do so.[91]  According to Mr. Moore, Dr. Hardrick refused to speak to him and avoided him after that incident.[92]  This incident occurred in the spring of 2018.[93]  Second, Mr. Moore states that Dr. Hardrick was upset with him after he pulled her nephew out of a basketball game for misbehaving.[94]  She threatened to pull her nephew off the team if Mr. Moore continued to not play him.[95]  This incident occurred in the fall of 2017.[96]  Third, Mr. Moore claims that he acted as a union representative on behalf of other teachers, minority teachers in particular, who believed that they were wronged or racially discriminated against.[97]  For instance, Mr. Moore

---

[86] Ex. 1 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-1) at 37.

[87] *Id.*

[88] *Id.* at 37.

[89] Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 6.

[90] *Id.* ¶ 13.

[91] Ex. 3 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-3) at 2–4.

[92] *Id.* at 4; Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 18.

[93] Ex. 3 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-3) at 4.

[94] *Id.* at 5.

[95] *Id.*

[96] *Id.*

[97] Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 13; Oct. 4, 2021 Hr'g Tr. at 39; Ex. 3 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-3) at 1.

emailed the administration on behalf of foreign teachers about Mr. Graml's lack of assistance in supporting the teachers' efforts to discipline students.[98]  Mr. Moore had helped other teachers in this capacity for a long period of time.[99]

## DISCUSSION

Mr. Moore alleges that he was terminated because of unlawful racial and age discrimination (and retaliation) in violation of Title VII, 42 U.S.C. § 1981, the ADEA, and the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

### I.    Title VII and 42 U.S.C. § 1981[100]

Mr. Moore alleges that he was terminated because of his race in violation of Title VII and 42 U.S.C. § 1981.[101]  Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."[102]  To survive a motion for summary judgment on a race discrimination claim, a plaintiff must either present admissible evidence directly indicating unlawful discrimination, or present evidence that creates

---

[98] Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31) ¶ 13; Oct. 4, 2021 Hr'g Tr. at 39; Ex. 3 to Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts (Doc. 31-3) at 1; Pl.'s Opp'n to Defs.' Mot. for Summ. J. (Doc. 29) at 8.

[99] Oct. 4, 2021 Hr'g Tr. at 43.

[100] The Court incorporates the same Title VII analysis to Plaintiff's 42 U.S.C. § 1981 claim because the same standard applies to both claims.  *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 936 n.2 (8th Cir. 2019) ("Because the same analysis applies to claims of discrimination . . . under Title VII and 42 U.S.C. § 1981, *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009), we use Title VII as shorthand for both claims below.") (internal quotation marks omitted); *Moore v. Forrest City Sch. Dist.*, 524 F.3d 879, 883 (8th Cir. 2008) (same).

[101] A plaintiff must exhaust his administrative remedies prior to bringing a Title VII discrimination claim.  *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630–31 (8th Cir. 2000).  A plaintiff satisfies this requirement by filing a charge of discrimination with the EEOC and receiving a right-to-sue letter.  *Id.* at 630.  The basis of the charge of discrimination must "give notice to [the employer of] all claims of discrimination."  *Id.*  The same exhaustion requirement applies to ADEA claims as well.  *See Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 825–26 (8th Cir. 2009).  The Court finds that Mr. Moore satisfied the exhaustion requirement for his Title VII and ADEA claims.  He filed a charge of discrimination with the EEOC and received a right-to-sue letter prior to filing this lawsuit.  Defendants do not dispute this.

[102] 42 U.S.C. § 2000e-2(a)(1).

an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*.[103]   Mr. Moore has provided no direct evidence of discrimination, so the *McDonnell Douglas* framework applies.

The *McDonnell Douglas* framework is as follows:

> [A] plaintiff must first establish a prima facie case of discrimination.   [If the plaintiff establishes a prima facie case], the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action.   If the defendant meets this burden, then the burden shifts back to the plaintiff to produce sufficient admissible evidence that creates a genuine issue of material fact regarding whether defendant's proffered nondiscriminatory justification is merely pretextual for intentional discrimination.[104]

In the termination context, a prima facie case for racial discrimination is established if the plaintiff shows that: "(1) [he] is a member of a protected group; (2) [he] was qualified for [his] position; (3) [he] was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination."[105]   One way a plaintiff can satisfy the fourth element is by showing that, "after his discharge, he was replaced by a person with similar qualifications."[106]

On this record, it is far from clear that a rational juror could conclude that Mr. Moore has established a prima facie case of racial discrimination.   He pretty clearly fails to satisfy the fourth

---

[103] 411 U.S. 792 (1973); *see also Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1058 (8th Cir. 2020).

[104] *Pribyl v. Cnty. of Wright*, 964 F.3d 793, 796 (8th Cir. 2020) (citations omitted).

[105] *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 879 (8th Cir. 2010) (quotation marks and citation omitted).   There appears to be some conflict in the Eighth Circuit with respect to the proper prima facie standard in Title VII cases. *Compare Elam*, 601 F.3d at 879, *with Carter*, 956 F.3d at 1058 (stating a prima facie case is established if the plaintiff shows that "(1) she is a member of a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)") (internal quotations marks and citations omitted).   Both *Elam* and *Carter* involved discharge discrimination claims under Title VII, and the Eighth Circuit has not explained whether these differing standards apply in different contexts.   It may be worth resolving this tension or providing guidance as to what circumstances dictate using one standard instead of the other.   Because the *Elam* standard is more plaintiff friendly and this is the standard cited by Mr. Moore, the Court will use it.   In any event, whether Mr. Moore established a prima facie case does not change the outcome of the Court's decision here because on this record a rational juror could not conclude that Defendants' nondiscriminatory reasons for terminating Mr. Moore were pretext for racial discrimination.

[106] *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003).

element.   But let's spot him the prima facie case.   Defendants are still entitled to summary judgment.   Here's why.

Defendants have articulated legitimate, nondiscriminatory reasons for terminating Mr. Moore, including (1) his repeated failure to timely submit lesson plans via email as Mr. Graml requested, (2) his repeated tardiness, (3) his excessive absences, and (4) his failure to manage his classroom and students.   Mr. Moore received numerous letters of reprimand from Mr. Graml, which notified Mr. Moore that he was failing to comply with school policies and standards. Additionally, the District placed Mr. Moore on the IGP to help him improve.   Despite having ample opportunity to improve, Mr. Moore failed to do so, which resulted in his termination.   The burden thus shifts back to Mr. Moore.   He must produce evidence that would allow a rational juror to conclude that Defendants' proffered nondiscriminatory justifications are merely pretext for intentional discrimination.   Mr. Moore has failed to do so.

An employee may demonstrate pretext in two ways—he may show that the employer's justification is unworthy of credence because it has no basis in fact or he may show that it is more likely that discriminatory animus motivated the employer's decision.[107]   Mr. Moore provides no evidence that would allow a rational juror to conclude that Defendants' proffered justifications have no basis in fact.   No genuine dispute of material fact exists as to whether Mr. Moore violated the District's policies and standards.   He admitted that he failed to email his lesson plans as Mr. Graml requested.   He admitted that he was repeatedly late in picking up his class from the cafeteria. He admitted that he had issues managing his students' behavior.   He admitted that the lesson on his white board did not match the content of the lesson he was teaching.   He admitted that he missed 18 days of work.   While Mr. Moore proffers excuses to justify his poor performance, that

---

[107] *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1117 (8th Cir. 2018).

doesn't change the fact that he did in fact violate the District's policies and standards. Even if Mr. Moore's evidence could convince a rational juror that Defendants should have overlooked the violations based on Mr. Moore's excuses for his conduct, that's a far cry from saying that Defendants had no basis in fact for their determination of violations and subsequent termination of Mr. Moore. At bottom, no evidence at all suggests that Defendants made up the violations. All the evidence points to these violations actually occurring and actually being the basis for the termination.

Similarly, Mr. Moore provides no evidence that would allow a rational juror to conclude that it is more likely than not that discriminatory animus (rather than Defendants' proffered justifications) motivated the termination of Mr. Moore. There's no evidence to show any racial animus. The most Mr. Moore can do is point to the hiring by Mr. Graml of one of his friends, a white man, in the spring of 2019, and the statement by that friend that he was going to teach science the next semester. Mr. Moore argues that Mr. Graml was trying to push Mr. Moore out so Mr. Graml could promote his friend to take over Mr. Moore's job. But recall that Mr. Moore's disciplinary problems began before the new hire started working for the District. Mr. Moore received his first letter of reprimand in December of 2018. This cuts against Mr. Moore. In any event, there's no suggestion that Mr. Graml's motivation for hiring his friend was the color of his friend's skin. At worst, there is a whiff that Mr. Graml's motivation for hiring his friend was favoritism because he wanted to help his friend out. Not because Mr. Graml had any racial animus towards Mr. Moore.

One "common way of proving pretext is to show that similarly situated employees were more favorably treated."[108] Mr. Moore points to no similarly situated white employees who were

---

[108] *Putman*, 348 F.3d at 736 (citing *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972–73 (8th Cir. 1994)).

treated more favorably than him.[109]   Indeed, he points to no other employee with the type of violations he had.  And even as to the student discipline issues, there's nothing to suggest that Mr. Moore was treated differently than his co-workers.  Rather, Mr. Moore went on at length in his deposition to say Mr. Graml also failed to support the other teachers on his hall.  According to Mr. Moore, Mr. Graml's poor leadership persisted after Mr. Moore's termination based on what he heard from his former colleagues and students.  All to say, the record has no evidence that Mr. Moore was treated worse or less favorably than other teachers who were similarly situated.

Defendants are entitled to summary judgment on Plaintiff's Title VII and § 1981 claims.[110]

## II.    ADEA

Mr. Moore alleges that Defendants discriminated against him based on his age in violation of the ADEA.  "The ADEA prohibits discrimination against employees, over the age of 40, because of their age."[111]  Plaintiff has the burden of proving "by a preponderance of the evidence that age was the but-for cause of the challenged employer decision."[112]  On summary judgment, the Court asks whether Mr. Moore has provided evidence that would allow a rational juror to conclude that Mr. Moore has met his burden.

---

[109] At the hearing, the Court asked Mr. Moore's counsel if there was any evidence in the record that Mr. Moore was treated differently than other teachers.  Oct. 4, 2021 Hr'g Tr. at 32.  Mr. Moore's counsel responded that he had no such evidence. *Id.*

[110] While Defendants did not raise the issue, the Court notes another reason the Title VII claim against Dr. Hardrick could not succeed.  Employees, including supervisors, may not be held individually liable under Title VII. *Bonomolo-Hagen v. Clay Central-Everly Cmty. Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997) (per curiam) ("Our Court quite recently has squarely held that supervisors may not be held individually liable under Title VII.") (citing *Spencer v. Ripley Cnty. State Bank*, 123 F.3d 690, 691–92 (8th Cir. 1997)); *Schoffstall v. Henderson*, 223 F.3d 818, 821 n.2 (8th Cir. 2000); *Lenhardt v. Basic Inst. of Tech., Inc.*, 55 F.3d 377, 381 (8th Cir. 1995) (collecting cases).

[111] *Canning v. Creighton Univ.*, 995 F.3d 603, 610–11 (8th Cir. 2021) (quoting *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 798 (8th Cir. 2014)).

[112] *Id.* at 611.

A plaintiff can rely on either direct evidence of discrimination or the burden-shifting framework under *McDonnell Douglas*.[113]  There's no direct evidence of age discrimination in the record so the *McDonnell Douglas* standard applies.  Under the *McDonnell Douglas* standard, a plaintiff must establish a prima facie case of discrimination.[114]  If a plaintiff establishes such a case, the burden of production "shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination."[115]  If that happens, the onus returns to the plaintiff "to show that the employer's reason was pretext for discrimination."[116]

"[T]he plaintiff must satisfy a four-part prima facie case of age discrimination: (1) the plaintiff is over 40 years old; (2) the plaintiff met the applicable job qualifications; (3) the plaintiff suffered an adverse employment action; and (4) there is some additional evidence that age was a factor in the employer's termination decision."[117]  The last prong can be "established by demonstrating the plaintiff was replaced by a substantially younger individual."[118]

---

[113] *Id.*  The Eighth Circuit has acknowledged that "it is unclear whether *McDonnell Douglas* technically applies to the ADEA because the ADEA has a 'but-for' causation standard rather than the mixed motives standard used in other statutes."  *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019).  But the Eighth Circuit has also made clear "that a plaintiff who fails to meet the lower standard of Title VII . . . necessarily fails to meet the ADEA's standard as well."  *Id.* at 795.  Because no rational juror could conclude that Mr. Moore's discrimination claims meet the *McDonnell Douglas* standard, the Court need not reach the question of whether his claims would survive the technically more rigorous but-for causation standard under the ADEA.

[114] *Canning*, 995 F.3d at 611.

[115] *Id.*

[116] *Id.*

[117] *Id.* (internal quotation marks and citation omitted). As the Court discussed in note 105, the same ambiguity regarding the prima facie test in the Title VII context exists in the ADEA context.  *Compare Canning*, 995 F.3d at 611, *with Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 763–64 (8th Cir. 2021) ("To establish a prima facie case, a plaintiff must show [he]  (1) was at least forty years old, (2) suffered an adverse employment action, (3) was meeting [his] employer's legitimate expectations at the time of the adverse employment action, and (4) was replaced by someone substantially younger.") (quotation marks and citation omitted).  For Mr. Moore's ADEA claim, the Court will also apply the more plaintiff-friendly standard identified in *Canning*.  In any event, whether Mr. Moore has established a prima facie case does not change the outcome of the Court's decision because on this record a rational juror could not conclude that Defendants' nondiscriminatory reasons for terminating Mr. Moore were pretext for age discrimination.

[118] *Anderson v. Durham D & M, LLC*, 606 F.3d 513, 523 (8th Cir. 2010).

On this record, a rational juror could not find that Mr. Moore has established a prima facie case of age discrimination.  Mr. Moore fails on the fourth element.  But again, let's spot him the prima facie case.  As discussed in the Title VII section above, Defendants have articulated legitimate, nondiscriminatory reasons for terminating Mr. Moore.  Also as discussed in the Title VII section and as discussed further below, Mr. Moore has not provided evidence from which a rational juror could conclude that Defendants' proffered nondiscriminatory reasons are merely pretext for intentional discrimination (whether race or age).

To show that Defendants' reasons are pretext for age discrimination, the Eighth Circuit requires Mr. Moore to "present evidence, that considered in its entirety (1) creates a fact issue as to whether [Defendants'] proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision."[119]  Because the ADEA requires but-for causation, "proof that the [reasons are] false is necessary, but not sufficient, to show a pretext for discrimination under the ADEA."[120]  In other words, Mr. Moore must provide evidence upon which a rational juror could conclude "that [Defendants'] stated reason was false and that age discrimination was the real reason."[121]

Mr. Moore has not shown pretext for intentional age discrimination for essentially the same reasons discussed above in the Title VII section.  No rational juror could find pretext for age discrimination based on the evidence in the record.  Mr. Moore points to three facts to show pretext: (1) the District hired a man in his mid-20s; (2) that young man told Mr. Moore that he was hired to teach science; and (3) that young man was Mr. Graml's friend.  Even assuming these facts show pretext, it would only be pretext for favoritism of a friend, not pretext for age discrimination.

---

[119] *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011).

[120] *Id.*

[121] *Id.*

Plus, Mr. Moore provides no evidence that the younger man replaced him after his termination. Mr. Moore and fellow science teacher, Mr. Hodges, left the District after the spring of 2019. Because two positions were open in the science department after 2018-19 school year, it wasn't necessary for the District to fire Mr. Moore in order to promote the younger man.

All in all, Mr. Moore provides no evidence upon which a rational juror could conclude that "age discrimination was the real reason" for his termination.[122]   It's possible that Mr. Graml wanted his friend to teach science instead of Mr. Moore.  It's possible that Mr. Graml did not like Mr. Moore because he refused to comply with Mr. Graml's request that Mr. Moore email him his lesson plans.  It's possible that Mr. Graml wanted to see Mr. Moore fired because Mr. Moore was routinely late to pick up his class from the cafeteria.  A rational juror could find a whole host of reasons in the record as to why Mr. Graml may have wanted to see Mr. Moore terminated.  But Mr. Moore has presented no evidence that one of those reasons (let alone a determinative reason) was Mr. Moore's age.[123]

### III.    Retaliation Claim

The Court next turns to Mr. Moore's retaliation claim.  Mr. Moore argues that Defendants retaliated against him by not renewing his contract in violation of Title VII.  Mr. Moore contends that he was retaliated against because: (1) he did not change Dr. Hardrick's daughter's grade when Dr. Hardrick asked him to; (2) he pulled Dr. Hardrick's nephew out of a basketball game that Mr. Moore was coaching; and (3) he acted as a union representative and advocated for teachers, typically minority teachers, who were mistreated.

---

[122] *Id.*

[123] While Defendants did not raise the issue, the Court notes another reason the ADEA claim against Dr. Hardrick could not succeed.  While the Eighth Circuit has not explicitly held that a supervisor cannot be held individually liable under the ADEA, most district courts in the Eighth Circuit have concluded that the Circuit, if confronted with the issue, would reach the same conclusion as it did in *Bonomolo-Hagen* and hold that individual liability is unavailable under the ADEA.  *Smith v. Bankers Life and Cas. Co.*, 519 F. Supp. 2d 964, 967 (S.D. Iowa 2007) (collecting cases).

Title VII "prohibits employer retaliation against employees who engage in a protected activity . . . ."[124]  When, as here, there is no direct evidence of retaliation, a plaintiff must create an inference of retaliation under a variant of the *McDonnell Douglas* framework.[125]  That framework has three steps: (1) the plaintiff must establish a prima facie case of retaliation; (2) the burden then shifts to the employer to show a legitimate non-retaliatory reason for its conduct; and (3) if the employer produces such evidence, the burden shifts back to the plaintiff to show that the proffered reason was merely pretext for retaliation.[126]  To establish a prima facie case of unlawful retaliation, a plaintiff "must demonstrate that (1) [he] engaged in statutorily protected activity, (2) the employer took adverse employment action against [him]; and (3) a causal connection exists between the employee's protected activity and the employer's adverse employment action."[127]

What constitutes protected activity?  Title VII makes it unlawful for an employer to discriminate against any individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[128]  Protected activity under Title VII takes place when a plaintiff reports unlawful behavior or participates in an investigation under Title VII.[129]  Examples of protected activity include filing an EEOC charge[130] or "making a sexual harassment complaint" about a supervisor or coworker to

---

[124] *AuBuchon v. Geithner*, 743 F.3d 638, 641 (8th Cir. 2014).

[125] *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 805 (8th Cir. 2019).

[126] *Id.*

[127] *AuBuchon*, 743 F.3d at 641.

[128] 42 U.S.C. 2000e-3(a).

[129] *See Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903, 913–14 (8th Cir. 2006); *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002).

[130] *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006).

HR.[131]  Based on the record evidence, no rational juror could conclude that Mr. Moore makes out a prima facie case for retaliation.  Mr. Moore did not engage in statutorily protected activity that could have been the basis for the alleged adverse employment action.

Mr. Moore cites three incidents that he says triggered retaliation. Neither of the two incidents involving Dr. Hardrick's family members constitutes protected activity.  Moreover, even if these activities were protected, they took place a couple of years before Mr. Moore's termination. Such a lengthy lapse in time between these incidents and his termination is too long to establish a causal link between the two.  With respect to Mr. Moore's role as a union representative, the record has virtually no evidence to explain his role or his activities in this role.  Mr. Moore's counsel argued at the hearing that minority teachers who believed they were mistreated based on their race came to Mr. Moore for help.[132]   At his deposition, Mr. Moore stated that he emailed the administration on one occasion to complain about Mr. Graml not supporting other teachers.  These activities do not constitute protected activity.  While his work as a union representative could have involved protected activity, nothing in the record suggests that he engaged in such activity. Moreover, even if his role did involve protected activity, Mr. Moore's counsel highlighted at the hearing that Mr. Moore had acted as a union representative "for a long period of time."[133]   The fact that Mr. Moore engaged in this activity for a "long period of time" fatally undermines any alleged causal link between that activity and the alleged adverse employment action taken against him from December 2018 to June 2019.  For these reasons, Mr. Moore has not provided any

---

[131] *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1245 (8th Cir. 1998).

[132] Oct. 4, 2021 Hr'g Tr. at 43.

[133] *Id.*

evidence from which a rational juror could conclude that Defendants retaliated against Mr. Moore in violation of Title VII.[134]

## IV.      Fourteenth Amendment

Mr. Moore argues that Defendants violated his rights protected by the Fourteenth Amendment's Equal Protection Clause by discriminating against him based on his age and race.[135] A violation of the Equal Protection Clause occurs when an act is committed with a "discriminatory racial purpose," and "an official act is not unconstitutional solely because it has a racially disproportionate impact." [136]  To prove there's a racially discriminatory purpose or direct effect, a plaintiff must point to intentional discrimination rather than a racially disproportionate impact.[137] Because (as discussed in the Title VII and ADEA sections) Mr. Moore has provided no evidence of intentional race  or intentional age discrimination, Mr. Moore cannot survive summary judgment on his Fourteenth Amendment claims.

---

[134] Because this Court analyzes ADEA retaliation claims under the same framework as Title VII retaliation claims, Mr. Moore's retaliation claim under the ADEA (had he actually brought one) would fail for the reasons already given. *Heisler*, 931 F.3d at 794 ("The ADEA has similar elements to Title VII for any claim for discrimination or retaliation.").

[135] Because the Court concludes that Defendants did not violate Mr. Moore's Fourteenth Amendment rights, it need not address the distinction between the individual and official capacity claims against Dr. Hardrick. Under both theories, Mr. Moore's claims fail because Defendants did not commit a constitutional violation.

[136] *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987) (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976) & *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265–66 (1977)); *Henley v. Brown*, 686 F.3d 634, 641–42 (8th Cir. 2012).

[137] *Foster*, 823 F.2d at 221.

**CONCLUSION**

Defendants' Motion for Summary Judgment is GRANTED in part.[138]

IT IS SO ORDERED this 12th day of November 2021.

_____

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[138] The Court declines to exercise supplemental jurisdiction over Mr. Moore's breach of contract claim under state law.  Given that this claim does not overlap with Mr. Moore's federal claims, efficiency considerations don't counsel in favor of this Court deciding the claim, and there's no risk that the Court's dismissal will prejudice the viability of this claim should Mr. Moore choose to pursue it in state court.  This claim is dismissed without prejudice.